IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SILVER PEAK SYSTEMS, INC.,      )
                                     )
      Plaintiff,              )
                                     )    C.A. No.  11-484-RGA-CJB
v.                                  )
                                   )    **PUBLIC VERSION**
RIVERBED TECHNOLOGY, INC.,      )
                                   )
      Defendant.          )

## SILVER PEAK'S OPENING BRIEF IN SUPPORT OF ITS POST-TRIAL MOTION FOR ENTRY OF PERMANENT INJUNCTION PURSUANT TO 35. U.S.C. § 283

OF COUNSEL:

Michael J. Sacksteder
Bryan A. Kohm
Lauren Whittemore
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Tel:  (415) 875-2300

Melissa H. Keyes
FENWICK & WEST LLP
Silicon Valley Center
801 California St.
Mountain View, CA  94041
Tel:  (650) 988-8500

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff Silver Peak Systems, Inc.*

Dated:  April 18, 2014
Public Version Dated: April 25, 2014
1147603 / 36988

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 3

STATEMENT OF FACTS ............................................................................................. 4

    I.     RIVERBED ADOPTED SILVER PEAK'S PATENTED TECHNOLOGY TO
         COMPETE IN THE DATA-CENTER-TO-DATA-CENTER MARKET ............. 4

    II.    RIVERBED USES SILVER PEAK'S PATENTED TECHNOLOGY TO
         COMPETE AGAINST IT ..................................................................................... 6

    III.   THE SCOPE OF HARM IS DIFFICULT TO ASCERTAIN FULLY AND IS
         ONGOING ............................................................................................................ 9

    IV.   SILVER PEAK'S LOST REVENUE CONSTRAINS GROWTH ...................... 10

ARGUMENT ................................................................................................................ 10

    I.     LEGAL STANDARD ........................................................................................ 10

    II.    THE COURT SHOULD ENJOIN RIVERBED FROM CONTINUED
         INFRINGEMENT OF SILVER PEAK'S PATENTS ......................................... 12

         A.    SILVER PEAK HAS SUFFERED AND CONTINUES TO SUFFER
              IRREPARABLY HARM BY RIVERBED'S INFRINGEMENT;
              MONETARY RELIEF IS INSUFFICIENT TO COMPENSATE
              SILVER PEAK .......................................................................................... 12

         B.    THE BALANCE OF HARDSHIPS FAVORS AN INJUNCTION ......... 15

         C.    THE PUBLIC INTEREST IS BEST SERVED BY GRANTING AN
              INJUNCTION ............................................................................................ 17

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

CASES

Pages

*800 Adept, Inc. v. Murex Securities, Ltd.,*
   505 F. Supp. 2d 1327 (M.D. Fla. 2007) .............................................................. 11

*Abbott Labs. v. Andrx Pharm., Inc.,*
   452 F.3d 1331 (Fed. Cir. 2006) ........................................................................... 17

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.,*
   579 F. Supp. 2d 554 (D. Del. 2008) .............................................................. 17, 18

*Atlanta Attachment Co. v. Leggett & Platt, Inc.,*
   2007 U.S. Dist. LEXIS 96872 (N.D. Ga. Feb. 23, 2007) ................................... 11

*Becton Dickinson & Co. v. Tyco Healthcare Grp. LP,*
   C.A. No. 02-1694 GMS, 2008 WL 4745882 (D. Del. Oct. 29, 2008) ............. 13, 16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
   C.A. No. C 10-3428 PSG, 2013 WL 140039 (N.D. Cal. Jan. 10, 2013) ........... 12, 13

*Callaway Golf Co. v. Acushnet Co.,*
   585 F. Supp. 2d 600 (D. Del. 2008) .................................................................... 18

*Cordance Corp. v. Amazon.com, Inc.,*
   730 F. Supp. 2d 333 (D. Del. 2010) .................................................................... 18

*Douglas Dynamics, LLC v. Buyers Prods. Co.,*
   717 F.3d 1336 (Fed. Cir. 2013) ................................................................. 13, 14, 15

*eBay Inc. v. MercExchange*, L.L.C.,
   547 U.S. 388 (2006) ........................................................................................... 11

*Finjan Software, Ltd. v. Secure Computing Corp.,*
   C.A. No. 06-369-GMS, 2009 WL 2524495 (D. Del. Aug. 18, 2009) .................... 17

*Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.,*
   No. C 03-1431 SBA, 2008 WL 928496 (N.D. Cal. Apr. 4, 2008) ......................... 12

*i4i Ltd. P'ship v. Microsoft Corp.,*
   598 F.3d 831 (Fed. Cir. 2010) ............................................................................. 16

*Martek Biosciences Corp. v. Nutrinova Inc.,*
   520 F. Supp. 2d 537 (D. Del. 2007) .................................................................... 14

*Muniauction, Inc. v. Thomson Corp.,*
   502 F. Supp. 2d 477 (W.D. Pa. July 31, 2007) .................................................... 14

*Novozymes A/S v. Genencor Int'l, Inc.,*
    474 F. Supp. 2d 592 (D. Del. 2007) ........................................................... 11, 12, 14

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    C.A. No. 04-1371-JJF, 2008 WL 5210843 (D. Del. Dec. 12, 2008) ............................. 16, 17

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    659 F.3d. 1142 (Fed. Cir. 2011) ................................................................. 13

*Smith & Nephew, Inc. v. Synthes (U.S.A.),*
    466 F. Supp. 2d 978 (W.D. Tenn. 2006) ......................................................... 11

*TruePosition Inc. v. Andrew Corp.,*
    568 F. Supp. 2d 500 (D. Del. 2008) ............................................................. 16

STATUTES

35 U.S.C. § 283 .................................................................................. 10

## INTRODUCTION

This case presents the shining example of when an injunction should issue.  Both this Court and a jury have determined that Riverbed Technology, Inc. ("Riverbed") infringes Silver Peak Systems, Inc.'s ("Silver Peak") valid patents.  No dispute exists that the parties directly compete with each other.  Nor does a reasonable dispute exist that given the competitive posture of the parties, Silver Peak is suffering tremendous harm from Riverbed's continued infringement which is direct, immediate and not wholly compensable by money damages.  Riverbed admitted as much when it sought to avoid a stay of the patent claims it had asserted against Silver Peak.

The balance of the hardships and public interest are also clear.  Silver Peak is suffering irreparable harm, and Riverbed has publicly stated that the infringing features are "minor" and that the outcome of this case would not impact its customers or the company.  In these circumstances, the strong public interest in enforcing patent rights prevails over any minor inconvenience of Riverbed.

Simply put, Silver Peak, a modest-sized company, should not be forced to compete against a large publicly-traded company that is using its patented technology in order to attempt to "crush" its competitors in the marketplace.

## NATURE AND STAGE OF THE PROCEEDINGS

In June 2011, Riverbed filed a complaint alleging that Silver Peak infringes four U.S. patents.  D.I. 1.  In August 2011 Silver Peak counterclaimed, asserting infringement of three U.S. patents, including U.S. Patent Nos. 7,945,736 (the "'736 patent") and 7,948,921 (the "'921 patent").  D.I. 13.  Riverbed withdrew its claims regarding two of the four originally asserted patents following the close of fact discovery.  D.I. 114.  The Court stayed the claims on the other two originally asserted Riverbed patents and a third Riverbed patent that was later asserted in an

amended complaint after an *inter partes* reexamination invalidated the asserted claims of the two remaining originally asserted Riverbed patents.

In October 2013, Silver Peak moved for summary judgment of infringement of the '921 patent. D.I. 184. The Court granted that motion in part on January 24, 2014, finding that Riverbed directly infringes the '921 patent, but leaving the issue of which versions of Riverbed's hardware and software are sold together for trial. D.I. 234. Prior to trial the parties agreed to stipulate that using Steelhead appliances and Virtual Steelheads operating RiOS Versions 5.0.0 through 8.0.0 while Enhanced Auto-Discovery ("EAD") and Full Transparency features are both turned on directly infringes Claim 1 of the '921 patent. Declaration of Bryan Kohm in Support of Silver Peak's Motion for Permanent Injunction Kohm ("Kohm") Exh. 1 ("Trial Tr.") 103:19-24. Silver Peak proved at trial which versions of Riverbed's hardware and software are sold together. Trial Tr. 908:21-946:5 (Wu). Riverbed accordingly deleted from the proposed verdict form its proposed questions regarding the use of versions of Steelhead devices and virtual Steelhead software with versions of the RiOS software. D.I. 271; Trial Tr. 1079:11-1080:10.

On April 1, 2014, following trial on the merits, a jury returned a unanimous verdict, almost entirely in favor of Silver Peak. D.I. 271. The jury found that Riverbed directly infringes claims 1, 2, 8, 9, 10 and 17 of the '736 patent under the doctrine of equivalents and contributorily infringes claims 1, 2, 8, 9, 10 and 17 of the '736 patent. *Id.* The jury also found that Riverbed indirectly infringes claim 1 of the '921 patent by inducement and that claim 1 of the '921 patent is not invalid. *Id.* The Court entered Judgment consistent with the jury's verdict on April 8, 2014. D.I. 280.

2

## SUMMARY OF ARGUMENT

Silver Peak respectfully requests that this Court issue a permanent injunction against Riverbed enjoining it from making, using, selling, offering to sell, importing, and supporting or otherwise aiding anyone from using Steelhead and Virtual Steelhead products running RiOS software versions 5.0.0 (6.0.0 for SDR-A) and above that include the infringing features or any features that are not colorably different. Those features are (1) Riverbed's SDR-Adaptive (Legacy and Advanced) and (2) its Enhanced Auto-Discovery ("EAD") when used in combination with Full Transparency. The basis for this motion, as discussed in greater detail below, is as follows:

- Riverbed's addition of Silver Peak's patented technology to its products has caused Silver Peak irreparable harm by causing Silver Peak to lose market share and customers, and it has and continues to diminish Silver Peak's goodwill and reputation in the WAN Optimization market.

- There is no adequate legal remedy to compensate Silver Peak for Riverbed's continued infringement, as Riverbed has admitted itself, particularly given the irreparable harm that Silver Peak has suffered and will continue to suffer if Riverbed is not enjoined.

- The balance of hardships weighs heavily in favor of granting an injunction. In contrast to the irreparable harm Riverbed's continued infringement would cause Silver Peak, Riverbed has stated publicly that the infringing features are "minor" and that any remedy would have no impact on its customers or its business. Thus, Riverbed cannot complain of suffering any harm alleged to result from an injunction against such purported "minor" features.

- The public interest would best be served by issuing an injunction against Riverbed, allowing Silver Peak to enjoy its right to exclude others from infringing its valid patent

3

rights and upholding the fundamental Constitutional purpose of awarding inventors a limited

monopoly over innovative technology.  No health or safety issues exist to counter the strong

public interest in protecting Silver Peak's right to exclude.

## STATEMENT OF FACTS

**I.    RIVERBED ADOPTED SILVER PEAK'S PATENTED TECHNOLOGY TO
       COMPETE IN THE DATA-CENTER-TO-DATA-CENTER MARKET**

The WAN optimization market comprises hardware and virtual appliances deployed to

"address[] application performance problems caused by bandwidth constraints and

latency/protocol limitations."  Declaration of Damon Ennis in Support of Silver Peak's Motion

for Permanent Injunction ("Ennis Decl." or "Ennis") Exh. E ███████████████  Numerous

deployments exist, but two of the most significant are data-center-to-data-center and branch

office deployments.  See Ennis Decl. at ¶ 3, ████████████████████

Before Silver Peak entered the WAN optimization market, Riverbed focused on branch

office deployments, and its appliances included features to address the problems presented by

such deployments—such as low bandwidth.  Ennis Decl. at ¶¶5, 6. ███████████████

████████████████████████████████  Data centers,

unlike branch offices, tend to be connected by networks with higher bandwidths, thus presenting

different challenges from those faced in typical branch office deployments.  Ennis Decl. at ¶8;

Declaration of David Hughes in Support of Silver Peak's Motion for Permanent Injunction

("Hughes Decl.") at ¶5.

Riverbed immediately viewed Silver Peak as a threat to its business.  Trial Tr. at 689:22-

690:5 (Kennelly) (Riverbed's CEO acknowledging that he viewed Silver Peak as a serious threat

in 2005).  Although Riverbed maintained a strong grasp on the branch office segment, its

appliances lacked the features and capabilities appropriate for data-center-to-data-center

deployments. Ennis Decl. at ¶ 11, Exh. A, ███████████████████████████████████

████████████ Trial Tr. at 218:17-24 (Hughes) (over time Silver Peak began seeing Riverbed

attempt to compete more in the data center segment); Trial Tr. at 392:13-396:14 (Chaffee); Trial

Tr. 406:6-407:9 (Day); Trial Tr. 413:8-415:12 (Day).  Silver Peak quickly became the leader for

data center deployments, and it continues as the leader today.  Ennis Exh. E; ██████████

███████ 13; Ennis Exh. B, ███████████████████

    By 2009, Riverbed acknowledged that Silver Peak had "successfully positioned [itself] as

the only 'carrier class' WAN optimization player and [has] established a good install base in the

DC to DC space."[1]  Kohm Exh. 2 at 1 (RVBD003732081).  Discontented with Silver Peak's

success in carrier deployments, Riverbed added "high-end features" to position itself as a more

viable competitor in that space.  Trial Tr. at 406:13-407:9 (Day); see Kohm Exh. 3 at 1

(RVBD00331966) (explaining that Riverbed added SDR-A after it realized that Silver Peak was

"sipping our milkshake"). ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Adaptive data streamlining, or

SDR-A, is the technology found to infringe the '736 patent.  Trial Tr. 472:1-473:3 (Spring); D.I.

271.  Features to enhance QoS[2] data and QoS workload-specific optimization, in turn, include

auto-optimization and transparency techniques claimed by the '921 patent.  Trial Tr. 899:9-

---

[1] "Carrier class" or "carrier deployments" is another way to refer to data-center-to-data-center
deployments.  Ennis Decl. at ¶ 4.

[2] QoS refers to Quality of Service.  Quality of Service means prioritizing the delivery of certain
data to enhance the quality of service being provided by the data.  Trial Tr. 899:9-900:12 (Wu);
Hughes Decl. at ¶8.  For example, it is important to prioritize voice-over-IP (VoIP) traffic over
email data because any delay in the delivery of VoIP traffic will cause quality issues for the
telephone call.  A few seconds delay in the delivery of email data, however, will largely go
unnoticed.

900:12 (Wu); 996:19-997:15 (Spring) . Before adopting Silver Peak's technology, Riverbed was considered weak in those areas—for example, ███████████████████████████████

███████████████████████████████████████████████████████████

## II. RIVERBED USES SILVER PEAK'S PATENTED TECHNOLOGY TO COMPETE AGAINST IT

As Riverbed itself has said, "it is undisputed that Riverbed and Silver Peak are direct competitors in the market for wide area network ("WAN") optimization." D.I. 139 ("Opp. to Stay Mot.") at 7-8; see Kohm Exh. 5 ("CA D.I. 33") at 5. Market reports confirm that the two companies compete head to head. ███████████████████████████

███████████████████████████████████████████████████████

███████



██████████████████████████ Silver Peak maintains a leadership position in the data-

center-to-data-center segment while Riverbed leads the branch office segment.  Ennis Decl. at

¶¶6, 15, Exh. E, ███████████████

Other companies offer WAN optimization solutions, but Riverbed stands as Silver Peak's

primary competition.  Ennis Decl. at ¶20. ████████████████████

████████████████████████████████████████

████████████████████████████████ see Trial Tr.

at 449:13-450:4 (Wolford).  Silver Peak's sales data confirms this fact.  The table below depicts

the number of head-to-head competitions Silver Peak has had with each competitor; over the past

two years, approximately ████ of Silver Peak's head-to-head competitive battles involved

Riverbed.  Ennis Decl. at ¶20.

| Competitor | Head-to-Head Competitions | Percent of Total |
|---|---|---|
| ███ | ██ | ██ |
| ███ | ██ | ██ |
| ███ | ██ | ██ |
| ████ | ██ | ██ |
| ███ | ██ | ██ |
| ███ | ██ | ██ |
| ████ | ██ | ██ |
| ███ | ██ | ██ |
| ███ | ██ | ██ |
| ███ | ██ | ██ |
| ███ | ██ | ██ |

Riverbed not only infringes Silver Peak's patents, it affirmatively uses that technology in

its sales pitches when competing against Silver Peak. ████████████████

████████████████████████████████

████████████████████████████████



███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

## III.    THE SCOPE OF HARM IS DIFFICULT TO ASCERTAIN FULLY AND IS ONGOING

The nature of the WAN optimization market makes it difficult to ascertain the full scope of harm caused by Riverbed's patent infringement. First, sales in the WAN optimization market are not one-off sales. Ennis Decl. at ¶19. Customers tend to purchase a certain volume of appliances, and then expand the deployment of the appliances to additional locations and applications. Ennis Decl. at ¶19. They purchase additional appliances as their overall traffic grows. Such expansion typically occurs with the incumbent's technology. Ennis Decl. at ¶19. So even if the initial lost sale amounted to only a handful of appliances the actual loss could be substantially greater as the customer adds more of the incumbent's appliances to its network. Ennis Decl. at ¶19. But because this expansion typically occurs over time and without competitive bidding, it is difficult to ascertain the full scope of the loss. Ennis Decl. at ¶18. This is particularly the case when Silver Peak was not able to compete for the original sale, and thus loses the chance to compete for the original sale and any future sales to that customer. Ennis Decl. at ¶¶18, 19.

Second, vendors in the WAN optimization market generate a substantial portion of their revenue through maintenance and support contracts. Ennis Decl. at ¶21. Most customers purchase such contracts, which come in varying levels of support and cost, on an annual basis. Ennis Decl. at ¶21. The level of contract varies by customer and typically is not determined until after a specific vendor has been selected, thus making it difficult to ascertain the revenue that Silver Peak would have generated from such services for any sales lost to Riverbed. Ennis Decl.

9

at ¶21. The number of years in which a contract will be held, and at which level, also varies, further complicating the determination of the full scope of lost revenue. Ennis Decl. at ¶21.

Third, as noted in the section above,  There is no way to determine how frequently Riverbed successfully plays this card, thus making it impossible fully to ascertain the damages incurred by Silver Peak via this stratagem. Ennis Decl. at ¶18.

IV.

**ARGUMENT**

## I.    LEGAL STANDARD

Section 283 of the Patent Act authorizes this Court, upon a finding of infringement, to impose a permanent injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent." 35 U.S.C. § 283. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test

before a court may grant such relief." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Irreparable injury is a basis for showing inadequacy of legal remedy, and accordingly the concepts of "irreparable injury" and "no adequate remedy at law" often overlap in the context of a permanent injunction. *800 Adept, Inc. v. Murex Securities, Ltd.,* 505 F. Supp. 2d 1327, 1336 (M.D. Fla. 2007); *see also Smith & Nephew, Inc. v. Synthes (U.S.A.),* 466 F. Supp. 2d 978, 982-986 (W.D. Tenn. 2006) ("Although stated as two separate factors under *eBay* the irreparable harm requirement contemplates the adequacy of alternate remedies available to the plaintiff.") (citations omitted).

Courts recognize "the fact that parties are direct competitors weighs heavily in determining the presence of irreparable injury." *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 2007 U.S. Dist. LEXIS 96872, at *18 (N.D. Ga. Feb. 23, 2007). This Court, for example, acknowledged that when parties are head-to-head competitors, "the statutory right to exclude represents a benefit that…cannot be equated by an award of cash." *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612-13 (D. Del. 2007).

II.   **THE COURT SHOULD ENJOIN RIVERBED FROM CONTINUED INFRINGEMENT OF SILVER PEAK'S PATENTS**

    A.   **Silver Peak Has Suffered and Continues to Suffer Irreparably Harm by Riverbed's Infringement; Monetary Relief Is Insufficient to Compensate Silver Peak[3]**

Riverbed's infringement in the WAN Optimization market, where Silver Peak and Riverbed compete head-to-head, has and continues to irreparably harm Silver Peak. *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008 WL 928496, at *3 (N.D. Cal. Apr. 4, 2008) ("[c]ourts routinely find irreparable harm, and therefore grant permanent injunctions where, as here, the infringer and the patentee are direct competitors"). Riverbed adopted the patented technologies of the '736 and '921 patents in order to compete in the data-center-to-data-center market, and it touts those features as an important aspect of its offering to customers to downplay Silver Peak's competitive edge, particularly in the data-center-to-data-center market. The result: lost sales, damage to Silver Peak's reputation and goodwill, and ███████████████████████████████ Monetary relief cannot fully cure this harm, and without an injunction, Silver Peak will continue to suffer irreparable harm.

A patentee's loss of exclusivity over a patented invention is "particularly injurious" when the infringer is a direct competitor. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, C.A. No. C 10-3428 PSG, 2013 WL 140039, at *4 (N.D. Cal. Jan. 10, 2013). In such circumstances, monetary damages are insufficient because the loss in market share, business opportunities and reputation is incalculable. *See e.g., Novozymes A/S*, 474 F. Supp 2d at 612-13 (noting that cash award insufficient and granting permanent injunction in matter involving "head-to-head competitors"). Indeed, "courts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor."

---

[3] Because of the significant overlap of the factors of irreparable harm and no adequate remedy at law relief, Silver Peak addresses those factors together.

12

*Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, C.A. No. 02-1694 GMS, 2008 WL

4745882, at *3 (D. Del. Oct. 29, 2008) (internal quotations and citations omitted).

One needs look no further than Riverbed's own words to see the significance of the

competitive situation between the parties. When Riverbed sought to avoid a stay of its claims

against Silver Peak, Riverbed unequivocally asserted that the competitive conditions between the

parties were such that an injunction was the appropriate remedy: "Any damages ... recover[ed]

three or four years down the road will be inadequate to compensate for ... continued

infringement." Opp. to Stay Mot. at 7-8. Riverbed also asserted that allowing a direct

competitor to infringe a patent would result in "extreme prejudice" and that the "harm in the

marketplace [] is not compensable by readily calculable money damages." *Id.* at 1; Kohm Decl.

Exh. 5 (CA D.I. 33) at 5. This Court, therefore, need only take Riverbed at its word to determine

that an injunction is appropriate here.

Not only are Silver Peak and Riverbed direct competitors, they are the only two primary

competitors in the data center market segment.[4]  Because Riverbed's adoption of Silver Peak's

patented technology diminishes Silver Peak's ability to differentiate itself in that market

segment, an injunction is well justified. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717

F.3d 1336, 1345 (Fed. Cir. 2013) (reversing denial of permanent injunction: "Where two

companies are in competition against one another, the patentee suffers the harm – often

irreparable – of being forced to compete against products that incorporate and infringe its own

---

[4] Although Silver Peak and Riverbed are the primary competitors in the data center segment, Silver Peak is not required to show that Riverbed is its only competitor in the market to establish irreparable harm. The Federal Circuit has rejected any such requirement because it "would effectively establish a presumption against irreparable harm whenever the market contains a plurality of players." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011). *See also Brocade*, 2013 WL 140039, at *4 n.37 ("Brocade is not obligated to show that it competes exclusively with A10") (*citing Robert Bosch*, 659 F.3d at 1151).

patented inventions."). Riverbed's infringement effectively deprives Silver Peak of its "right, granted by Congress, not to assist its rival with the use of [its] proprietary technology." *Novozymes A/S*, 474 F. Supp. 2d at 613; *see also Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp. 2d 537, 559 (D. Del. 2007); *Douglas Dynamics,* 717 F.3d at 1345 (irreparable harm results from a patentee being forced to compete with its own patented technology). If a patent holder, such as Silver Peak, cannot exclude its primary competitor from infringing its patents, the well-accepted notion that a patent provides a right to exclude is turned on its head. *See Muniauction, Inc. v. Thomson Corp.,* 502 F. Supp. 2d 477, 482 (W.D. Pa. July 31, 2007), ("If plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value.").

Silver Peak is also suffering irreparable harm beyond that resulting from lost sales. By infringing the '736 and '921 patents, Riverbed diminishes Silver Peak's reputation as an innovator in the data center segment. See *Douglas Dynamics*, 717 F.3d at 1344 (erosion in reputation and brand distinction constitutes irreparable harm). █████████████

████████████████████████████████████████████████

████████████████████████████    ██████████████████

████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████  By offering Silver Peak's patented technology as its own, Riverbed damages Silver Peak's reputation for segment-leading products with features unique for the data center segment. The Federal Circuit recognized in *Douglas Dynamics* that a patentee's "reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in

competitors' [products]." *Douglas Dynamics,* 717 F.3d at 1344-45. 

Riverbed's infringement further causes irreparable harm that later monetary relief cannot cure by decelerating Silver Peak's growth as a company. Silver Peak is a smaller, privately-funded company.

Moreover, the extent of lost sales caused by Riverbed's infringement is difficult to ascertain. A number of lost sales result from Riverbed's convincing customers that because it offers the same features as Silver Peak, those customers need not even invite Silver Peak to the competitive table. It is difficult, if not impossible, to quantify the volume of sales lost by Silver Peak to Riverbed through this mechanism. Ennis Decl. at ¶18. But Riverbed could not tell customers it offered the same features if it were not infringing Silver Peak's patents, and therefore this irreparable harm can be cured by issuance of an injunction.

**B.    The Balance of Hardships Favors an Injunction**

The balance of the hardships weighs heavily in Silver Peak's favor. In balancing hardships, courts assess the relative effects of an injunction on the parties and weigh several

factors, including the parties' sizes, products, and revenue sources. *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 862-63 (Fed. Cir. 2010). Silver Peak, by contrast, would suffer significant hardship absent an injunction. It is a small company, numbering approximately 150 employees. As demonstrated above, Riverbed's infringement suffers a variety of irreparable harm, including ███████████████████ and harm to its reputation and goodwill. *See TruePosition Inc. v. Andrew Corp.,* 568 F. Supp. 2d 500, 532 (D. Del. 2008) (finding balance of hardships favors plaintiff who suffers encroachment of its patent rights, loss of customers and market share, and injury to goodwill and reputation).

On the day the jury reached its verdict of infringement, Riverbed publicly stated that the patented features at issue are but "two *minor* optional features in our RiOS software." Kohm Exh. 11 at 2 (Riverbed 4/1/2014 Statement) (emphasis added). Riverbed further asserted that the outcome of the case "*will not have any impact* on our business or customers." *Id.* (emphasis added). By Riverbed's own admission, therefore, it will suffer little or no hardship if enjoined from continuing to infringe Silver Peak's patents. To the extent that an injunction would harm Riverbed's business relationships or goodwill and reputation, Riverbed assumed such risk when it placed infringing products into the market and continued its sales. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* C.A. No. 04-1371-JJF, 2008 WL 5210843, at *1 (D. Del. Dec. 12, 2008) (noting that it was defendant's infringing conduct and not the enjoining of that conduct that was the basis for any harm to defendant's industry reputation); *Becton Dickinson,* 2008 WL 4745882, at *4 ("Tyco's business relationships may be harmed by an injunction, but that is the risk that Tyco took when it placed a potentially infringing product on the market and continued to make sales of that product.").

In comparison to the irreparable harms Silver Peak has and continues to suffer as the result of Riverbed's infringement, Riverbed faces no hardships, especially considering that it may continue to practice non-patented technology. The balance of hardships thus weighs decidedly in Silver Peak's favor.

## C.    The Public Interest is Best Served by Granting an Injunction

A strong public policy favors the enforcement of patent rights. *See, e.g., Finjan Software, Ltd. v. Secure Computing Corp.*, C.A. No. 06-369-GMS, 2009 WL 2524495, at *11 (D. Del. Aug. 18, 2009) (citing *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir.1998)). The Federal Circuit has acknowledged that "the public is best served by enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006). The public also has an interest in maintaining diversity in competitive markets. *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 561 (D. Del. 2008). The strong public policy favoring enforcement of patent rights therefore weighs in favor of granting an injunction here.

Riverbed can identify no legitimate public interest that would justify a contrary result. Given that Silver Peak's patented technology is not connected with any particular public health or safety concerns, general policy favoring enforcement of patent rights controls. *See Power Integrations*, 2008 WL 5210843, at *1 (concluding that public interest in enforcing patent protection weighs in favor of injunction, and no health or safety concerns were implicated that detracted from that interest). Nor would enjoining Riverbed result in a less diverse market. Silver Peak is not asking the Court to enjoin all sales of Riverbed's Steelhead and Virtual Steelhead products. Instead, Silver Peak moves the Court to direct Riverbed to remove the infringing features from any future RiOS software releases, including all future patches to

17

previously released versions of RiOS. Riverbed's products will remain in the market, although Riverbed will not be allowed to benefit from infringing Silver Peak's patents going forward.

Furthermore, any inconvenience to Riverbed's customers resulting from the prevention of use of the infringing features is insufficient to overcome the policy in favor of enforcing patent rights. *Compare Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 344 (D. Del. 2010) (noting that defendant's customers could still purchase items from defendant if defendant were enjoined) *and Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 600, 622 (D. Del. 2008) (finding that disappointment to golfers contractually bound to infringing products was insufficient to counter public policy favoring patent rights enforcement, where no public health or safety concerns existed, and other products on the market could fill demand) *with Advanced Cardiovascular*, 579 F. Supp. 2d at 561 (noting evidence of physician preference for infringing products and associated effect on public health). Accordingly, the public interest is strongly served by issuance of a permanent injunction.

## CONCLUSION

Riverbed admits that the parties are competitors and that money damages would be insufficient if its own patents were infringed. It adopted Silver Peak's patented technology and uses that technology to diminish Silver Peak's ability to distinguish itself in the market, resulting in lost sales, diminished reputation and goodwill, and fewer resources to fuel growth. Irreparable harm could not be clearer. Riverbed has publicly stated that the jury's verdict will have *no impact* on its customers or its business, and thus it can claim no substantial hardship. Moreover, no public interest concerns exist to overcome the public's interest in protecting an inventor's right to exclude a primary competitor. Silver Peak, therefore, respectfully requests that the Court grant its motion for permanent injunction against Riverbed.

18

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael J. Sacksteder
Bryan A. Kohm
Lauren Whittemore
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Tel:  (415) 875-2300

Melissa H. Keyes
FENWICK & WEST LLP
Silicon Valley Center
801 California St.
Mountain View, CA  94041
Tel:  (650) 988-8500

Dated:  April 18, 2014
Public Version Dated: April 25, 2014
1147603 / 36988

By:   */s/ Richard L. Horwitz*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Plaintiff*
*Silver Peak Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 25, 2014, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on April 25, 2014, the attached document was Electronically Mailed

to the following person(s):

Thomas C. Grimm
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
PO Box 1347
Wilmington, DE  19899-1347
tgrimm@mnat.com
jtigan@mnat.com

Matthew B. Lehr
Anthony I. Fenwick
Shiwoong Kim
Neal A. Potischman
Gareth DeWalt
Igor Piryasev
Davis Polk & Wardell LLP
1600 El Camino Real
Menlo Park, CA  94025
matthew.lehr@davispolk.com
anthony.fenwick@davispolk.com
shiwoong.kim@davispolk.com
neal.potischman@davispolk.com
gareth.dewalt@davispolk.com
igor.piryazev@davispolk.com

By:    /s/ Richard L. Horwitz
        Richard L. Horwitz
        David E. Moore
        Bindu A. Palapura
        POTTER ANDERSON & CORROON LLP
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

1021029/36988